UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

    SQUIRES MOTEL, LLC,                      CASE NO. 09-61416
                                                                    Chapter 11

                            Debtor(s)
--------------------------------------------------------
APPEARANCES:

LESLIE N. REIZES, ESQ.
*Attorney for Debtor*
1200 South Federal Highway
Suite 301
Boynton Beach, Florida 33435

STEPHEN A. DONATO, ESQ.
*Attorney for Michael Gance*
One Lincoln Center
Syracuse, New York 13202

GUY A. VANBAALEN, ESQ.
*Assistant United States Trustee*
10 Broad Street
Suite 105
Utica, New York 13501

Hon. Diane Davis, U.S. Bankruptcy Judge

**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**

      Presently before the Court is a motion filed by Michael A. Gance, individually and as Executor of the Estate of Anthony Gance (hereinafter referred to as "Gance") on June 12, 2009, seeking dismissal of the chapter 11 case of Squires Motel, LLC (the "Debtor") pursuant to § 1112(b) of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101-1532 ("Code"), or in the alternative, relief from the automatic stay pursuant to Code § 362(d).  Opposition to the motion was filed on behalf of the Debtor on June 29, 2009.

The motion was heard on July 2, 2009, at the Court's regular motion term in Binghamton, New York, and adjourned to August 6, 2009.[1] The parties were afforded an opportunity to file memoranda of law by August 27, 2009, and the Court adjourned the motion to September 3, 2009, At the hearing on September 3, 2009, following oral argument, the Court indicated that it would grant the motion and dismiss the case pursuant to Code § 1112(b) based on a finding of bad faith and the lack of a reasonable likelihood of reorganization. The Court apprized the parties that it would issue a Memorandum-Decision and Order setting forth the basis for its ruling in written form.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(A).

## FACTS

Southside Storage, LLC ("Southside"), a non-debtor entity related to the Debtor owns

---

[1] At the hearing on July 2, 2009, the Court directed the Debtor to pay the taxes due postpetition by the end of July, as well as July's mortgage payment. By letter from Gance's counsel, dated August 3, 2009 (Dkt. No. 28), it was represented to the Court that the Debtor had not provided proof of payment of its postpetition tax obligations and had not paid the July 2009 mortgage payment owed to Gance. According to the affidavit of Wilson O. Rigdon, III ("Rigdon"), sworn to August 4, 2009 (Dkt. No. 31) ("Rigdon August Affidavit"), he had forwarded the July mortgage payment in the amount of $2,741 to his attorney and had paid $1,411.22 in taxes to the "Village." However, in excess of $30,000 in real property taxes had become due in June 2009, which Rigdon acknowledged had not been paid.

approximately 30 properties[2] in the Broome County area, six of which were transferred to the Debtor on the eve of the bankruptcy filing on May 20, 2009. *See* Affidavit of Rigdon, sworn to June 29, 2009 (Dkt. No. 21) ("Rigdon June Affidavit"). According to Debtor's counsel, the properties were transferred to the Debtor to enable "those particular distressed properties to reorganize efficiently and without disturbing the operations of the remaining properties and dragging unrelated creditors needlessly into a bankruptcy proceeding." *See* Debtor's Memorandum of Law, filed June 29, 2009 (Dkt. No. 21), at 1-2.

Rigdon indicates that Southside purchased the properties consisting of two small apartment buildings on Squires Avenue in Endicott, New York, and a restaurant, motel and rental complex on Watson Boulevard in Endicott, New York (collectively, the "Properties") from Anthony Gance in December 2006. Rigdon, the principal of both the Debtor and Southside, along with his father, Wilson O. Rigdon, Jr., personally guaranteed the obligations. On June 19, 2008, Gance commenced foreclosure actions in New York State Supreme Court for Broome County and moved for the appointment of a Referee in each case apparently upon learning that Southside had stopped paying the real property taxes on the Properties in January 2008. According to Gance, the foreclosure actions were vigorously opposed by Southside. In September 2008 Gance moved for summary judgment, and Judge Ferris Lebous granted a conditional order for summary judgment requiring that Southside pay the real property taxes on the Properties by October 19, 2008. Southside allegedly paid the taxes the first week of November 2008. *See* Rigdon June Affidavit at ¶ 20. In addition,

---

[2] At the hearing on July 2, 2009, it was represented to the Court that Southside actually owns 500 units of residential property. In addition, it was alleged that at the time of filing there were at least five foreclosure actions and eight pending tax foreclosures against some of its properties, in addition to the properties transferred to the Debtor.

4

there have been no mortgage payments made since October 2008, although according to Rigdon an attempt was made to make the November 2008 payment, which was returned. *Id.* at ¶ 9.

On February 20, 2009, the State Court appointed a temporary receiver, Mark Huebner of ReRent Property Management Services ("Huebner"). Debtor alleges that despite having collected rents from the tenants, Gance failed to pay either real property taxes or utility bills. Debtor also alleges that during Gance's "'stewardship', the buildings' occupancy rates deteriorated significantly." *Id.* at 3. On April 8, 2009, Judge Lebous entered judgments of foreclosure in both cases and foreclosure sales were scheduled to be held on May 21, 2009. The parties agreed to the amount to be set forth in the judgments of foreclosure, and Southside did not appeal the judgments.

Instead, Southside transferred the Properties to a newly formed entity, namely the Debtor (*see* Exhibit "A" attached to Gance's motion), on or about May 19, 2009, two days prior to the scheduled foreclosure sales. Gance asserts that the transfer was for no consideration, citing to the recording documentation that shows "0" as the consideration paid. *See* Exhibit "B" attached to Gance's motion. At the hearing on July 2, 2009, Gance's counsel also indicated that at the § 341 meeting held on June 26, 2009, Southside's counsel, Harvey D. Mervis, Esq., who apparently appeared at the § 341 meeting on behalf of the Debtor,[3] acknowledged that there had been no consideration paid for the transfer. However, according to Leslie Reizes, Esq. ("Reizes"), also appearing on behalf of the

---

[3] In a letter, dated July 28, 2009, addressed to HSBC Bank U.S.A. National Association, Mervis indicated that Hinman, Howard & Kattell, LLP, of which he is a partner, represented the Debtor. *See* Attachment to Rigdon August Affidavit. Hinman, Howard & Kattell, LLP serve as counsel to Southside, and at the hearing held on September 3, 2009, the Court denied Hinman, Howard & Kattell, LLP, application for appointment as special counsel to the Debtor.

Debtor, the transfer was made in exchange for the issuance of stock in the Debtor.[4] Reizes indicated that the recording documents listed "0" because the ownership in both Southside and the Debtor remained the same and thus, following the transfer there was no taxable event.  On May 20, 2009, the Debtor filed a voluntary chapter 11 petition, and since the filing the Debtor has continued to operate the Properties.

Gance argues that the case was commenced in bad faith and demonstrates what other courts have identified as the "new debtor syndrome."  It is Gance's position that Southside is the true debtor, and it should have been Southside that filed.  Indeed, Gance contends that the unsecured debt identified in the schedules actually belongs to Southside.

Reizes, on behalf of the Debtor, disputes that the filing is an example of the "new debtor syndrome."  He points out that

> [t]he key attribute of "new debtor syndrome" filings is that the new debtor is not actually a business - - it is not using the assets newly transferred to it to make money. The new entity "usually has few if any unsecured debts, no employees other than the controlling participants, no means of servicing the debt other than through the transferred property, no cash flow, and no ongoing business prospects."

*See* Debtor's Memorandum of Law, filed June 29, 2009 (Dkt. No. 21), at 6, citing *In re Adbrite Corp.*, 290 B.R. 209, 218 (Bankr. S.D.N.Y. 2003) (cited by Gance).  According to Reizes, the Debtor does have cash flow and business prospects with which to service the debt, noting that the Debtor is collecting rents and intends to increase the rates of occupancy and increase cash flow generated by the Properties.  *Id.*  Reizes takes the position that what was done by Southside was no different from

---

[4] On August 5, 2009, Reizes filed an application for employment as Debtor's counsel with the Court on notice and scheduling it for a hearing on Septemer 3, 2009, after having submitted his application to the Office of the United States Trustee ("USU") in May 2009.  On August 21, 2009, the UST filed opposition to the motion.  The motion was adjourned to October 1, 2009, as of the date of this decision the Debtor remains without approved counsel.

that done recently by Chrysler and General Motors, namely transferring good assets to a newly created entity, although Reizes acknowledges that the latter occurred postpetition with the bankruptcy court's oversight and approval.

According to the Debtor's Schedules, the assets in the case total $405,748 and liabilities total $426,605.03. The Debtor identifies six unsecured creditors, including NYSEG, owed $6,459.17 in utility fees; David Crowley, Esq., owed $1,100 in referee fees; Broome Co-operative Insurance, owed $906.41 for insurance; ReRent Management Co., owed $722.74 in management fees, and Huebner, owed $528.78 in receiver fees. The only other creditors listed are the tax entities/municipalities, including Broome County, Town of Union and the Union-Endicott School District, as well as Gance.

Schedule A lists the apartment complex at 103-105 Squires Avenue as being worth $154,145, subject to Gance's secured claim in the same amount, and the restaurant and motel complex as being worth $251,603, subject to Gance's secured claim in the same amount. According to Amended Schedule D, filed June 5, 2009, Broome County Finance Department allegedly holds tax liens on the Properties totaling approximately $30,000.[5] Reizes indicates that "[p]otential elements of the Plan include abandoning the motel and restaurant complex . . . ." *See* Debtor's Memorandum of Law, filed June 29, 2009, at 4. At the hearing on July 2, 2009, Reizes also alluded to the possibility of holding onto the Properties and restructuring the debt or cramming down the interest rates. Rigdon notes that the Properties previously generated some $6,000 in rental income per month and with rents from a restaurant tenant, income would exceed $7,000. *See* Rigdon June Affidavit at ¶ 3. He states that the mortgage payments total approximately $2,700 per month and the taxes currently total less than $2,500 per month. He also indicates that Debtor is considering abandonment of the restaurant

---

[5] According to the proof of claim filed on behalf of Broome County on June 24, 2009, a total of $11,144.93 in taxes were owed on two separate parcels in the Town of Union.

7

and motel complex to Gance.

## DISCUSSION

A bankruptcy court has discretion to dismiss a chapter 11 petition "for cause" pursuant to Code § 1112(b). *In re R & G Props., Inc.*, Case No. 08-10876, 2009 WL 1076703, at *1 (Bankr. D.Vt. April 16, 2009) (citations omitted). Code § 1112(b)(4) identifies a list of ten examples of cause. However, the list is not exhaustive and the courts have recognized an implicit requirement that a chapter 11 case be filed in good faith. *See In re Gen. Growth Props., Inc.*, 409 B.R. 43, 55 (Bankr. S.D.N.Y. 2009); *In re HBA East, Inc.*, 87 B.R. 248, 258 (Bankr. E.D.N.Y. 1988) (citing cases). As one court has noted, "the standard in this Circuit is that a bankruptcy petition will be dismissed if **both** objective futility of the reorganization process **and** subjective bad faith in filing the petition are found." *In re Kingston Square Assocs.*, 214 B.R. 713, 725 (Bankr. S.D.N.Y 1997) (emphasis in original). As the court in *Kingston Square* pointed out, "[i]t is the totality of circumstances, rather than any single factor, that will determine whether good faith exists." *Id.; see also C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1312 (2d Cir. 1997) (indicating that a finding of bad faith "requires a full examination of all the circumstances of the case" and is "a highly factual determination").

Among such facts and circumstances, a court should consider (1) whether the filing of the petition was strategically timed to obtain a litigation advantage; (2) whether the debtor's reorganization effort is essentially a two party dispute; (3) the nature and extent of the debtor's assets, debts and business operations; and (4) whether there is a reasonable probability that a reorganization

8

plan can be proposed and confirmed. *HBA East*, 87 B.R. at 259.

In this case, Gance has the burden to show cause for dismissal by a preponderance of the evidence. *R&G Props.*, 2009 WL 1076703, at *2, citing *In re Stephen's 350 East 116th St.*, 313 B.R. 161, 170 (Bankr. S.D.N.Y. 2004). Furthermore, this burden may be satisfied if the Court finds that a presumption of bad faith based on what Gance's attorney has identified as the "new debtor syndrome." *See In re Yukon Enters., Inc.*, 39 B.R. 919, 921 (Bankr. C.D.Cal. 1984); *see generally*, *Trident Assocs. Ltd. P'ship v. Metropolitan Life Ins. Co. (In re Trident Assoc. Ltd. P'ship)*, 52 F.3d 127, 132 (6th Cri. 1995) (stating that the "new debtor syndrome" consists of a one-asset debtor created on the eve of foreclosure to isolate the property and the mortgagee from the rest of the operations of the transferor); *In re Cinole, Inc.*, 339 B.R. 40, 45 (Bankr. W.D.N.Y. 2006) (recognizing the "new debtor syndrome" as describing when a debtor is created or property is transferred solely for the purpose of filing a bankruptcy case).

In *Yukon Enterprises*, the court found numerous badges of bad faith to be present in cases involving the "new debtor syndrome." These included:

> 1) the transfer of distressed real property into a newly created or dormant entity, usually a partnership or corporation;
>
> 2) the transfer occurring within close proximity to the filing of the bankruptcy case;
>
> 3) no consideration being paid for the transferred property other than stock in the debtor;
>
> 4) the debtor having no assets other than the recently transferred, distressed property;
>
> 5) the debtor having no or minimal unsecured debts;
>
> 6) the debtor having no employees and no ongoing business; and
>
> 7) the debtor having no means, other than the transferred property, to service the debt on the property.

*Id.* at 921. The court held that "once the creditor establishes that the transfer of the distressed property to the debtor was in close proximity to the filing of the case, a prima facie showing of bad faith has been shown, thus creating a rebuttable presumption of bad faith. The burden, thereafter, is on the debtor to establish good and sufficient reasons why the relief should not be granted." *Id.*

Applying those factors to the matter presently before this Court:

The Properties, all subject to a foreclosure sale scheduled for May 21, 2009, were transferred to the Debtor on May 19, 2009, the same day on which the Debtor, a limited liability company, was created; the transfer of the Properties occurred the day before the chapter 11 case was filed; no consideration was paid for the transfer by the Debtor, except for stock in the Debtor; the Debtor has no other assets except the Properties; the Debtor has no unsecured debts at the time of filing and has no means to service the debt except from the income generated by the Properties; the Debtor has no employees although Rigdon indicates that he devotes a significant part of his time to the Debtor's affairs. *See* Rigdon June Affidavit at ¶ 27. It does appear that the Debtor has an ongoing business, namely the operation of the apartment complex and the units rented as part of the restaurant/motel complex.[6] Based on these factors, the Court concludes that there has been a prima facie showing of bad faith with respect to the filing of Debtor's petition.

Accordingly, the Debtor has the burden of establishing that there are unusual circumstances that exist such that dismissal of the case would not be in the best interests of creditors and the estate. In this regard, Code § 1112(b)(2) requires that the Debtor establish

> (A) there is a reasonable likelihood that a plan will be confirmed . . . within a reasonable period of time; and (B) the grounds for granting such relief include an act

---

[6] The parties' papers do not indicate whether the restaurant is currently operating. Reference is made by Rigdon to the possibility of being able to generate an additional $1,000 per month with a "restaurant tenant." *See* Rigdon June Affidavit at ¶ 3.

>or omission of the debtor other than under paragraph (4)(A) - - (i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2). This comports with the view expressed in *Kingston Square,* as noted previously, that there exist both a finding of subjective bad faith in filing the petition **and** the objective futility of the reorganization process.

The Debtor contends that it intends to file a plan that will pay creditors 100% once it is able to increase the occupancy rates of both the apartment complex and the motel units and is able to lower the assessments on the Properties. In addition, Reizes indicates that Rigdon is willing to infuse cash into the operations to cover any shortfall until the rate of occupancy is increased and the taxes reduced. The problem, from the Court's perspective, rests on what is clearly a two party dispute that was previously resolved in the State Court foreclosure proceedings, apparently after extensive litigation. The only real creditors in this case is Gance, individually and on behalf of his late father's estate, and the taxing authorities, whose liens prime any interest Gance might have.

Debtor makes the argument that courts often decline to dismiss a case before a plan has been proposed, recognizing "the reality that parties often find it in their best interests to agree on the terms of a plan, despite their litigating posture, as well as the fact that debt can always be left unimpaired." *See* Letter Memorandum, dated August 27, 2009 (Dkt. No. 45) at 2. For instance, in *Faflich Associates v. Court Living Corp. (In re Court Living Corp.)*, Civil Action 96-965, 1996 WL 527333 (S.D.N.Y. Sept. 16, 1996), cited by Reizes, the lessor of three stores located in the debtor's building, moved to dismiss the debtor's chapter 11 case or to lift the automatic stay. At the time, the lessor had paid more than $50,000 in taxes on the property and held four first priority tax liens against it. *Id.* at *1. The motion was denied and eight months later the lessor filed a motion to convert the case,

11

which was also denied. The district court considered the latter motion basically a renewal of the dismissal motion, both based on Code § 1112(b). The district court acknowledged that the lessor's argument was that it would vote against any plan proposed by the debtor and that the City of New York, which had a tax lien against the premises owned by the debtor in excess of $100,000, would also want to enforce its claims against the debtor. *Id.* at *4. The lessor argued that the only way for the debtor to effectuate a plan would be to pay it and the City of New York what was owed on the effective day of the plan. The court concluded that the argument was premature given that the debtor had not even proposed a plan of reorganization. *Id.* The court found that the lessor would not be unduly prejudiced by any delay given the amount of equity in the property to cover its claim.

In the matter presently under consideration by this Court, the Debtor, in its schedules, places a value on the Properties as equal to the amount owed to Gance. Thus, there is no equity in the Property to protect Gance, and Gance would clearly be prejudiced by any delay. This is particularly significant when one considers that the Court's focus is on the best interests of creditors and the estate in considering Code § 1112(b)(2). The secured creditors, including Gance, are the only true creditors in this case and their interests, in the view of the Court, are best served by the dismissal of this case. As pointed out by Gance, he will not vote for any plan that does not pay him, individually and as executor of his late father's estate, the full amount of the judgments of foreclosure, making it impossible to confirm a plan pursuant to Code § 1129(a)(7).[7] The same holds true should it be determined that Gance's judgment amount exceeds the fair market value of the Properties, given the property taxes that prime Gance's mortgages. In that case, Gance will also be the largest unsecured

---

[7] At the hearing on September 3, 2009, Reizes suggested that the taxing authorities might be willing to delay receipt of the taxes owed to them on the Properties. In response, Gance's counsel pointed out that it could simply pay them and taken an assignment, thereby precluding any class from voting in favor of any plan proposed by the Debtor.

                                    Document      Page 12 of 12

12

creditor.  This conclusion is based on the belief that the unsecured creditors, listed in the Debtor's petitions as being owed a total of $9,712, are actually unsecured creditors of Southside based on the fact that the transfer of the Properties to the Debtor by Southside occurred on the same day as its formation and only one day prior to the filing of its bankruptcy petition.  Also, if the value of the Properties is the same as the amount of Gance's claims, as Debtor has indicated in its schedules, then any tax claims will further erode any equity potential Gance might have.

> As noted by the court in *In re Lizeric Realty Corp.*, 188 B.R. 499 (Bankr. S.D.N.Y. 1995),
>
> [u]nder § 1112(b)(2) of the Code, the court may "dismiss or convert a case if [it] determines that it is unreasonable to expect that a plan can be confirmed in a chapter 11 case." 5 *Collier on Bankruptcy* ¶ 1112.03[ii] at 1112-20.  Thus, courts will dismiss chapter 11 cases under this section where "the debtor lacks the ability to formulate a plan or carry one out."

*Id.* at 503 (citations omitted).  While recognizing that dismissal of a case, particularly after only four months, is a drastic measure, nevertheless, based on a review of the circumstances in this case, the Court concludes that dismissal of the case is warranted based on the Court's determination that it is reasonable to expect that the Debtor will be unable to confirm a plan for the reasons discussed above and that determination of subjective bad faith in filing the petition.

Based on the foregoing, it is hereby

ORDERED that Gance's motion seeking dismissal of the case pursuant to Code § 1112(b) is granted, rendering Gance's request for relief from the automatic stay moot.

Dated at Utica, New York
this 17th day of September 2009

                                             /s/ *Diane Davis*
                                           DIANE DAVIS
                                           U.S. Bankruptcy Judge